**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| MICHAEL AMOS, et al., | : | Case No. 1:19-cv-719 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| NVR, INC., d/b/a RYAN HOMES, et al., | : | |
| | : | |
| Defendants. | : | |

---

## OPINION AND ORDER

---

This case is before the Court on three motions for summary judgment. (Docs. 35, 36, 38.) Plaintiffs Michael and Natasha Amos bring suit against Defendants NVR, Inc., otherwise known as Ryan Homes, and NVR Mortgage Finance, Inc., following the construction of a home. Each party has filed a motion for summary judgment and each motion is ripe for review.

### FACTS

**A. Plaintiffs' Version of the Facts**

The following is Plaintiffs' version of the facts from their briefing. They base most of their facts on a declaration signed by Plaintiff Natasha Amos. (Amos Decl., Doc. 37.)

*Facts as to Defendant Ryan Homes.* In July 2017, Plaintiffs entered into a contract with Ryan Homes for the construction of a new home. The home was originally planned to be complete in December 2017. Plaintiffs claim that problems beset the construction early on. By August, they had attempted to terminate the contract. But Ryan Homes

1

refused to permit termination, making other offers instead.  Ryan Homes promised to repair or replace defects Plaintiffs pointed out.

That December, Ryan Homes told Plaintiffs the home was almost ready.  Plaintiffs paid the cash deposit and arranged to move from their existing home to the new one.  According to Plaintiffs, however, the new home was not complete.  Upon inspection, they discovered several items that needed to be completed or fixed.  They created a "punch list" of items that Ryan Homes promised to complete within ten days.  The project manager assured Plaintiffs that most of the work would be done by closing.  Several outdoor items were also incomplete but would need to be completed the following spring.  The outdoor work included planting grass seed, laying sod, repairing the driveway, and grading the lot.  Ryan Homes told Plaintiffs this work would be in March or April 2018.

The punch list work, however, was not completed within ten days.  The ground floor remained out of level.  When Ryan Homes workers came out in late January to fix the flooring, they removed portions of the basement ceiling and cut structural floor joists.  Plaintiffs hired an independent inspector, Michael Clark, to look at it.  Clark noted that the repair to the floor did not comply with the building code and that it compromised the floor's structural integrity.  Ryan Homes, in Plaintiffs' view, did not acknowledge the problem and maintained that the floor repair was successful.  The building company sent a flooring expert, who concluded that the floor was up to industry standards.  But, based on Clark's report, Plaintiffs sought the opinion of a structural engineer, Richard Graman.  Graman found that the floor repair had done damage to the home and violated the

building code. He provided specifications for repairs and recommended the work be done immediately.

In April 2018, Plaintiffs contacted Ryan Homes about laying sod and planting grass seed. In Plaintiffs' telling, Ryan Homes would not perform any of the outdoor work until the parties reached a resolution of all the outstanding issues. Settlement proved elusive. From Plaintiffs' perspective, Ryan Homes complicated matters with its demands. For instance, it demanded that Plaintiffs refrain from recording its employees while at Plaintiffs' home—Plaintiffs had a security system at their home, which they were reluctant to disable because some of their property had been damaged or gone missing while Ryan Homes' contractors were on their property. Additionally, as a part of Ryan Homes' proposal to repair the floor, it told Plaintiffs they would have to leave their house for a period of time. The company offered to reimburse them for temporary lodging and other expenses. It also insisted that Plaintiffs sign a confidentiality agreement. In the end, the parties did not agree on the terms of the floor repair.

Plaintiffs, aware that the one-year anniversary of the closing was approaching, asked Ryan Homes to address a list of items. Ryan Homes, however, told Plaintiffs that no warranty work would be done until the parties reached a comprehensive settlement of all the issues. Thus, the punch list items remained unaddressed, the yard had no grass, and the landscape had not been graded. In addition, Ryan Homes' temporary certificate of occupancy, good for one year, had expired.

*Facts as to Defendant NVR Mortgage*. NVR Mortgage served as the mortgage lender for Plaintiffs' purchase of the home from Ryan Homes. According to Plaintiffs, Ryan

Homes told Plaintiffs that certain parts of the work on the home would not be complete by closing. When they heard this, they passed on the information to NVR Mortgage and requested that funds be held in escrow proportionate to the value of the incomplete work. Their plan was that funds would be paid over to Ryan Homes when the work was completed.

NVR Mortgage agreed to escrow funds covering a portion of the work. It executed an escrow holdback agreement with Plaintiffs. (Doc. 36-1.) This agreement, however, only pertained to certain outdoor work, such as grading, sod, and grass seed. Plaintiffs had sought an escrow for interior work as well. Thus, according to Plaintiffs, NVR Mortgage, a subsidiary of Ryan Homes, did not create an escrow for all of the outstanding incomplete items.

### B. Defendants' Version of the Facts

*Defendant Ryan Homes.* Ryan Homes agrees that, in July 2017, it contracted with Plaintiffs to construct a new home. In the Purchase Agreement the parties executed, they agreed to a provision that limits the amount of time a party may bring suit:

> Claims and Disputes. You and We agree that *any and all claims arising out of or relating to this Agreement*, Settlement hereunder, or improvements to the Property, regardless of legal theory, *except any claims under the Limited Warranty* ("Claims"), *shall be subject to a one (1) year limitation of action period and bar date*. Such claims based on matters occurring before the Settlement Date shall be deemed to have arisen and accrued, if at all, and the one-year limitation of action period for all such claims shall begin to run on the Actual Settlement Date. All application of the so-called "discovery rule" is mutually waived by the parties. *By executing this Agreement, You acknowledge Your understanding and agreement to these terms and that the said one (1) year period is completely reasonable in all respects*. Notwithstanding the foregoing, these bar date terms shall not apply to claims for indemnity and/or contribution by Us against You and/or any other person. These

> rights may only be enforced by You and Us and nothing herein shall be construed to create any third party beneficiary rights in any other person or entity.

(Ex. A to Compl., Doc. 10-1, Pg. ID 294 (emphasis added).) Ryan Homes states that the term "Actual Settlement Date" is defined in the Purchase Agreement as being the date of settlement, meaning the date of closing. The closing date was December 15, 2017. (Michael Amos Dep., Doc. 34-1, Pg. ID 499.)

Ryan Homes does not deny that Plaintiffs' allegations began in the summer of 2017. By April 2018, Plaintiffs had engaged counsel to negotiate on their behalf with Ryan Homes. In May 2018, the parties participated in a joint inspection of the home. They discussed possible ways to resolve the dispute. These discussions broke down. However, Ryan Homes refers to a letter dated July 3, 2018, in which it proposed addressing the warranty issues, among other issues. (Exhibit, Amos Decl., Doc. 37-8, Pg. ID 1182.) About a year later, Plaintiffs filed this lawsuit in the Common Pleas Court of Clermont County, Ohio.

*Defendant NVR Mortgage.* NVR Mortgage acknowledges that it escrowed funds at the closing to cover the cost of exterior work that could not be completed until the spring. It explains that this fact was fully disclosed to Plaintiffs and that Plaintiff Michael Amos agreed in several writings that these were the only funds being escrowed at closing. Michael had conversations with Linda Cook of NVR Mortgage about escrowing funds. She told him it was not a common practice for Ryan Homes to set aside funds for outstanding work. (Michael Amos Dep., Doc. 34-1, Pg. ID 498-99.) After that, Plaintiffs "dropped" the issue and proceeded to closing. (*Id.* at Pg. ID 499.)

ANALYSIS

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point out specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to plumb the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). A "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element upon which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

There are five remaining claims in this lawsuit: count one, breach of contract and/or warranty against Ryan homes; count two, breach of implied warranty against Ryan Homes; count three, negligence against Ryan Homes; count four, a claim under the Ohio Home Construction Services Supplies Act (HCSSA), R.C. 4722.01 et seq., against Ryan Homes; and count five, a claim under the Ohio Consumer Sales Practices Act

6

(CSPA), R.C. 1345.01 et seq., against NVR Mortgage.  The parties stipulated to the dismissal of count six for civil conspiracy against both defendants.  (Doc. 45.)

Ryan Homes moves for partial summary judgment, claiming that all of Plaintiffs' claims, except for any claims made under the Limited Warranty, are time-barred by the one-year limitations period in the Purchase Agreement ("Limitations Clause").  As for claims under the Limited Warranty, Ryan Homes argues that Plaintiffs are barred from recovering damages.  (Doc. 35.)  NVR Mortgage moves for summary judgment, asserting that Plaintiffs fail to allege any unfair or deceptive consumer sales practice under the CSPA.  (Doc. 36.)  Plaintiffs also move for summary judgment against Ryan Homes, contending that it has breached its contract, express warranty, and implied warranty and that it has violated R.C. 4722.02 and .03.  (Doc. 38.)

## I.      Time-barred claims

Ryan Homes moves for summary judgment on all of the remaining claims against it, counts one through four.  It argues that all of Plaintiffs' claims accrued on December 15, 2017, but they did not file this action until over a year later on July 31, 2019.  This dooms their lawsuit, according to Ryan Homes, based on the Limitations Clause in § 14 of the Purchase Agreement.  That clause provides that "any and all claims . . . except any claims under the Limited Warranty . . . shall be subject to a one (1) year limitation of action period and bar date."  (Ex. A to Compl., Doc. 10-1, Pg. ID 294.)  The "one-year limitation of action period for all such claims shall begin to run" on the closing date.  (*Id.*)  The Limitations Clause further provides that the one-year period is "completely reasonable in all respects."  (*Id.*)  On this language, Ryan Homes maintains, the only

claims that survive are any claims brought under the Limited Warranty.

When a statute "creating the cause of action is silent regarding a limitations period," parties to a contract may agree on a limited time period within which suit must be brought. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107 (2013). If a statute does provide for a statute of limitations, the limitations periods can be abridged by contract. *In re Alfes*, 709 F.3d 631, 640 (6th Cir. 2013). An abridged limitation period needs to be reasonable. *E.g.*, *Appel v. Cooper Ins. Co.*, 80 N.E. 955, 956 (1907). Here, an applicable statute, the HCSSA, R.C. 4722.01 et seq., does not contain a statute of limitations. And Ohio law provides for a six-year statute of limitations on breach of contract claims. R.C. 2305.06. Thus, for claims not subject to a statute of limitations and for claims that are, the parties to the contract here were permitted to contract for a limitation on when suit could be brought. *Heimeshoff*, 571 U.S. at 107; *Alfes*, 709 F.3d at 640. Further, they expressly agreed that the one-year period was "completely reasonable in all respects." (Ex. A to Compl., Doc. 10-1, Pg. ID 294.) This limitation did not apply to "claims under the Limited Warranty." (*Id.*) But the Limitations Clause precludes all other claims from being brought after the one-year mark.

Importantly, the Limitations Clause also specifies on which date all claims are deemed to have accrued. The Purchase Agreement refers to the "Actual Settlement Date," which is the closing date, the day the buyers receive the keys and are able to move in. (*Id*. at Pg. ID 292; Compl., ¶ 43.) That date occurred in December 2017. (First Amended Compl., Doc. 10, ¶ 43.) Any claims relating to the Purchase Agreement, based on the contract language, accrued no later than the closing date. The language shows

8

that all claims, whether arising before or after the closing date, accrued no later than the closing date in December 2017. The limitations period began then and closed in December 2018. Plaintiffs, however, did not file this lawsuit until July 2019. By application of the parties' agreement, therefore, Plaintiffs' claims are time barred, except for any that fall under the Limited Warranty.

Plaintiffs' arguments to the contrary are unavailing for the following reasons.

1. Plaintiffs first argue that the one-year Limitations Clause is in direct conflict with the HCSSA. The HCSSA, R.C. 4722.03(A)(4), provides that no "home construction service supplier" shall "[m]ake the performance of any home construction service contingent upon an owner's waiver of any rights" found under the HCSSA. Elsewhere, the statute provides owners with a cause of action for HCSSA violations and entitles them with various forms of relief, including actions for recission. R.C. 4722.08. "In any action for rescission, revocation of the transaction must occur within a reasonable time after the owner discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the transaction." R.C. 4722.08(B). These two statutes operate together, Plaintiffs argue, to forbid application of the Limitations Clause. Otherwise, they contend, the Limitations Clause constitutes an unlawful waiver of an owner's rights to bring a claim within a reasonable time.

The Court disagrees for the following reasons.

First, contrary to Plaintiffs' legal theory, the Limitations Clause did not actually result in their waiver of the right to sue under the HCSSA. They had that right for the first year after closing. So they did not *waive* a cause of action for recission; they

contracted for a definite time period within which they would have to bring that cause of action. This is a permissible practice. *See, e,g, Heimeshoff*, 571 U.S. at 107 (parties may contract for a definite limitations period when the statute creating the cause of action is silent on the issue). The fact that Plaintiffs brought the case after the agreed-upon time had expired does not mean that they had altogether waived the right to bring the case earlier. Simply, the Limitations Clause is not a waiver; it's a limitation.

Second, even granting for discussion's sake the premise that limiting the timeline to bring suit acts as a waiver, there is no evidence that Ryan Homes "ma[d]e the performance of [the] home construction service *contingent* upon" that limitation. Although Plaintiffs negotiated parts of the contract, nothing suggests that Plaintiffs tried and failed to negotiate the Limitations Clause out of the Purchase Agreement. Nor do the parties or record indicate that Ryan Homes insisted on the inclusion of the Limitations Clause to the point that it would have refused to contract with Plaintiffs without it. By all accounts, Plaintiffs signed the Purchase Agreement voluntarily. Absent is any evidence that Ryan Homes conditioned the build on an abridgement of Plaintiffs' HCSSA rights to sue for recission. So it cannot be the case that the builder made the construction *contingent* upon the owners limiting their ability to bring a cause of action after the first year.

Third, notwithstanding the above, the Limitations Clause expressly provides that all parties agreed that the one-year period is reasonable. That resolves the matter even under Plaintiffs' legal theory of the case. As long as a limitations period is reasonable and not foreclosed by statute, parties may validly limit between themselves the time

within which they can bring a lawsuit. *Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947). Courts enforce such agreements. *Heimeshoff*, 571 U.S. at 115. Here, Plaintiffs agreed that one year was reasonable. That agreement forecloses an argument to the contrary. Their discussion of *Miller v. Progressive Cas. Ins. Co.*, 635 N.E.2d 317, 320 (Ohio 1994) and *Colvin v. Globe Am. Cas. Co.*, 432 N.E.2d 167 (Ohio 1982) is beside the point. Those cases deal with uninsured and underinsured motorist coverage and whether the policies in those cases were against public policy. In contrast, this case deals with a home construction contract and the briefs do not address why its enforcement does or does not comport with public policy.

2. Plaintiffs also argue that their lawsuit was timely filed. The gist of their premise is that their claim for breach of contract did not accrue until around January 2019, meaning they had a year from that date to file their lawsuit. (Doc. 40 at Pg. ID 1341.) They filed suit on July 31, 2019, so, in their view, their complaint was timely filed.

Plaintiffs misread the contract. To be sure, the Limitations Clause expressly exempts claims under the Limited Warranty from its scope. So, to the extent Plaintiffs are bringing a claim under the Limited Warranty, that claim is not precluded by the one-year time bar. But all their other claims are. This is based on the plain language of the clause. Section 14 provides that, for purposes of calculating the limitation period, "claims based on matters occurring before the Settlement Date shall be deemed to have arisen and accrued, if at all, and the one-year limitation of action period for all such claims shall begin to run on the Actual Settlement Date." (Ex. A to Compl., Doc. 10-1, Pg. ID 294.) As explained above, the Actual Settlement Date in December 2017 is the date when claims

11

relating to the Purchase Agreement accrued—not the date Ryan Homes "refus[ed] to perform" (*see* Doc. 40, Pg. ID 1342.)  So Plaintiffs had until December 2018 to bring this case.  (Ex. A to Compl., Doc. 10-1, Pg. ID 292; Compl., ¶ 43.)  Because they did not, their claims, except for claims under the Limited Warranty, were not timely filed.

3.  Lastly, Plaintiffs maintain that the Limitations Clause is procedurally and substantively unconscionable.  "Procedural unconscionability involves the absence of meaningful choice on the part of one of the parties, or the indication that there was no meeting of the minds." *Conte v. Blossom Homes, L.L.C.*, 63 N.E.3d 1245, 1250 (Ohio Ct. App. 2016).  "Indicators of procedural unconscionability include intelligence, age, education, whether the provisions were explained to the less sophisticated party and whether alternative sources existed for the goods or services in question." *Id.* at 1250–51. "Substantive unconscionability pertains to the contract itself, without any consideration of the individual contracting parties, and requires a determination of whether the contract terms are commercially reasonable in the context of the transaction involved." *Wallace v. Ganley Auto Grp.*, 2011 WL 2434093, ¶ 21 (Ohio Ct. App. 2011).

The Purchase Agreement is not unconscionable.  To be unconscionable, a contract must be both procedurally and substantively unconscionable.  *Ball v. Ohio State Home Servs., Inc.*, 861 N.E.2d 553, 558 (Ohio Ct. App. 2006).  As to procedural unconscionability, Plaintiffs emphasize that the Purchase Agreement is a pre-printed form produced by Ryan Homes' attorneys and offered in an interaction with substantial inequality in bargaining power.  But Ohio courts find that neither a preprinted contract nor inequal bargaining position suffice to render a contract procedurally unconscionable.  *Neel v. A.*

12

*Perrino Constr., Inc.*, 113 N.E.3d 70, 77–78 (Ohio Ct. App. 2018). Because the Purchase Agreement is not procedurally unconscionable, the Court need not address substantive unconscionability. *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 24 (Ohio 2008).

*       *       *

For the reasons above, Plaintiffs' claims against Ryan Homes are time-barred, except the one that arises under the Limited Warranty. Count One, to the extent it claims breach of contract, is time barred. To the extent Count One claims breach of warranty against Ryan Homes, it may proceed. Count Two, breach of implied warranty, is time barred, because the implied warranty to which it refers is distinct from the express Limited Warranty specified in the Limitations Clause. Count Three, negligence, is time barred because it does not fit under the exception in the Limitations Clause. Lastly, and for the same reason, Count Four, brought under the HCSSA, is also time barred.

## II.     The Limited Warranty and its Exclusive-Remedy Clause

The only remaining claim is Count One, to the extent it alleges that Ryan Homes breached the Limited Warranty. On this score, Plaintiffs and Ryan Homes both cross-move for summary judgment. Two issues are presented here: whether there has been a breach of the Limited Warranty and whether the Exclusive-Remedy Clause contained within it is enforceable.

Ryan Homes argues that, regarding their claim under the Limited Warranty, they are entitled only to the remedy specified in that warranty. That is, in the event of defect, Ryan Homes "will repair, replace, or pay the reasonable cost of repairing or replacing the defective component. The Builder will have the right to decide in its own discretion

13

which of those remedies it will provide." (Doc. 35-4, Pg. ID 823.) The Limited Warranty goes on to provide that "[u]nder no circumstances will the Builder be liable for special, incidental or consequential damages . . . regardless of the form of action or legal theory under which any claim is asserted against the Builder for breach of warranty, breach of contract, negligence or strict liability." (*Id.*) It also contains an "Exclusive-Remedy Clause": "The repair, replacement or payment remedy selected by the Builder will be the exclusive remedy for which the Builder will be liable with respect to the pertinent defect." (*Id.*) The Purchase Agreement, § 6, incorporates the Limited Warranty. (Doc. 10-1, Pg. ID 291.)

**A. The Court denies summary judgment on breach of the Limited Warranty.**

Ryan Homes argues that it exercised its right under the Limited Warranty "to offer repair" of the alleged defects as the remedy, referring to the July 3, 2018 letter Ryan Homes sent to counsel for Plaintiffs. (Doc. 35, Pg. ID 596; Amos Decl., Doc. 37-8, Pg. ID 1182.) But the record is unclear as to whether Ryan Homes ever actually provided that service. The Limited Warranty provides that the builder "*will* repair, replace, or pay" the cost of repairing and replacing the defects. (Doc. 35-4, Pg. ID 823.) That is different from merely *offering* to repair the defects. For this reason, the Court cannot determine that Ryan Homes has discharged its responsibility under the Limited Warranty and denies summary judgment for Ryan Homes.

Plaintiffs also move for summary judgment on the breach of warranty. They argue that expert witnesses agreed that the floor was structurally compromised and in violation of the building code. They also claim that Ryan Homes breached the warranty by

14

refusing to perform warranty work. (Doc. 38, Pg. ID 1205-08.)

Ryan Homes does not deny that Plaintiffs' only surviving claim lies under the Limited Warranty. But it disagrees with Plaintiffs on whether or not it refused to perform warranty work. The parties' disagreement revolves largely around the attempted floor repair, the outdoor work, communications between Plaintiffs and Ryan Homes' Regional Production Manager Joe Buehler, and how the failed efforts to arrive at a comprehensive settlement impacted those things. The parties find little to agree about on these issues; and, upon review, the Court finds that genuine disputes of material fact abound. Accordingly, the Court denies summary judgment for Plaintiffs as to whether Ryan Homes breached the Limited Warranty.

**B. The Exclusive-Remedy Clause is enforceable.**

The previous finding does not, however, prevent the Court from reaching the parties' dispute over the Exclusive-Remedy Clause. Ryan Homes asks the Court to find that Plaintiffs are barred from recovering monetary damages, based on the terms of the Limited Warranty. Plaintiffs, for their part, contend that the Exclusive-Remedy clause is unenforceable. (Doc. 40, Pg. ID 1342.)

The Court finds that the Exclusive-Remedy Clause is enforceable. "Parties can agree to almost anything in contracts." *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 753 F. Supp. 2d 665, 668 (E.D. Ky. 2010). The Court will enforce the agreement these parties made to limit the remedies to repair, replacement, or payment to cover the cost of repair or replacement.

Plaintiffs' numerous arguments to the contrary are unavailing.

15

First, Plaintiffs argue that the HCSSA grants consumers non-exclusive rights and remedies. (Doc. 40, Pg. ID 1342.) True enough. But they cite no authority providing that consumers may not contractually limit the remedies available to them in a given relationship or dispute. "[U]nless some law or readily identifiable public policy removes an area from freedom of contract's realm, courts will enforce an agreement between parties." *Id.* at 668. Plaintiffs fail to point out any such law or public policy, so their argument fails.

Second, Plaintiffs argue that the remedies under the Limited Warranty fail of their essential purpose. They cite an Ohio case applying the failure-of-essential purpose analysis to a construction case. *Wilson v. Kelly Energy Sys., Inc.*, No. C-910510, 1992 WL 277074, at *3 (Ohio Ct. App. Oct. 7, 1992). They also cite a decision noting that "[w]hen a warranty provides for repair or replacement of parts to remedy a defect and the manufacturer is unable to successfully do so, the warranty fails its essential purpose which is to provide the buyer an adequate remedy to correct defects." *Haithcock v. Graham Ford, Inc.*, No. 81AP-935, 1982 WL 4614, at *4 (Ohio Ct. App. Dec. 30, 1982). But from there, Plaintiffs argue that they "have no obligation to continue to permit Ryan [Homes] to fix its mistakes." (Doc. 38, Pg. ID 1207.) This statement does not follow from the law they cite. The fact is that the Limited Warranty provides that Ryan Homes will repair, replace, or pay the reasonable cost of repairing or replacing defective components. It cannot be conclusively determined at this stage that the exclusive remedy deprives Plaintiffs of the substantial value of their bargain, leaving them without a remedy. The reason: negotiations fell through as the parties were attempting to resolve the various

repairs at issue here.  So the Court cannot find that the Exclusive-Remedy Clause fails of its essential purpose.  *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 614 (N.D. Ohio 2016).

Third, Plaintiffs argue that the Exclusive-Remedy Clause is unconscionable.  For the same reasons the Limitations Clause is not unconscionable, *see supra*, they are wrong.

For these reasons, the Exclusive-Remedy Clause is enforceable.  Plaintiffs are barred from recovering monetary damages and will be limited to receiving the remedies they contracted for in the Limited Warranty.

## III.    Certificate of insurance

Plaintiffs argue that Ryan Homes violates the HCSSA, R.C. 4722.02(A)(8), because the Purchase Agreement did not contain a certificate of insurance showing general liability coverage.  (Doc. 38, Pg. ID 1211.)  Plaintiffs do not, however, instruct the Court as to the effect this has on the case or the parties' relationship.  Ryan Homes admits that the Purchase Agreement did not contain a certificate of insurance, but that it is self-insured up to an amount well in excess of the purchase price of Plaintiffs' home.  (Doc. 38-3, Pg. ID 1242, ¶ 21.)  On this briefing and record, the Court is unable to enter summary judgment on this issue.

## IV.    CSPA claim against NVR Mortgage

Plaintiffs have one remaining suit pending (count five) against NVR Mortgage, brought under the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. (CSPA).  They claim that NVR Mortgage refused to escrow a portion of the purchase price at the closing, in contravention of good lending practice, even though work remained to be performed by Ryan Homes.  (Compl., Doc. 10, ¶ 115.)  NVR Mortgage's refusal to escrow funds as

security, Plaintiffs argue, was an unfair or deceptive consumer sales practice.

NVR Mortgage moves for summary judgment on the CSPA claim. It essentially argues that its refusal to escrow funds as security for the remaining work is not an unfair or deceptive act under the CSPA. Specifically, it asserts that refusing to escrow funds at a closing on a home loan is not among the deceptive practices listed in R.C. 1345.02(B) (an argument it relinquishes in its reply), that its representation that Ryan Homes provided a warranty was true, and that the record shows that Plaintiffs were not misled.

"If the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, then the act or statement is deceptive." *Frey v. Vin Devers, Inc.*, 608 N.E.2d 796, 800 (Ohio Ct. App. 1992). The case law generally focuses on "deceptive" acts, but "unfair" acts are also prohibited. *Saraf v. Maronda Homes, Inc. of Ohio*, 2002 WL 31750249, ¶ 58 (Ohio Ct. App. 2002). For instance, an Ohio court held that it was an unfair act to prevent the buyer of a new home from bringing his own inspector to the pre-settlement inspection of a newly constructed house. *Id.* at ¶¶ 59-67.

Here, Plaintiffs argue that they were placed in a situation in which various indoor work and outdoor work was not complete, yet they were being directed to pay the full purchase price. (Doc. 41, Pg. ID 1352.) NVR Mortgage does not deny that it is affiliated with Ryan Homes, whose official name is NVR Inc., and who stood to be at a disadvantage if part of the sale price was escrowed. A reasonable jury could find that it was unfair for NVR Mortgage to refuse to escrow a portion of the funds that reflected the work that remained to be completed or repaired in the house. For this reason, the Court

18

need not reach NVR Mortgage's other arguments.  Accordingly, the Court denies summary judgment.

## CONCLUSION

For the reasons above, the Court orders as follows:

(1) The Court **GRANTS IN PART** summary judgment on Count One, breach of contract, *except* to the extent Count One brings a claim for breach of warranty.

(2) The Court **DENIES IN PART** summary judgment on Count One, in that Plaintiffs maintain their cause of action against Ryan Homes for breach of warranty.

(3) The Court **FINDS** that the Exclusive-Remedy Clause in the Limited Warranty is enforceable.

(4) The Court **GRANTS** summary judgment on Count Two.

(5) The Court **GRANTS** summary judgment on Count Three.

(6) The Court **GRANTS** summary judgment on Count Four.

(7) The Court **DENIES** summary judgment on Count Five.

This case will proceed on the breach of warranty claim against Ryan Homes and the CSPA claim against NVR Mortgage.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND